UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| EMPLOYEES RETIREMENT SYSTEM OF THE CITY OF ST. LOUIS, *et al.*, | : |
| Plaintiffs, | : Case No. 2:20-cv-4813 |
| v. | : Chief Judge Algenon L. Marbley |
| CHARLES E. JONES, *et al.*, | : Magistrate Judge Kimberly A. Jolson |
| Defendants. | : |

**OPINION & ORDER ON MOTION TO STAY**

This matter is before the Court on a Motion to Stay by nominal Defendant FirstEnergy Corp. ("FirstEnergy," or the "Company"). (ECF No. 120). The Court has determined that it can resolve this Motion on the papers and without oral argument. For the reasons that follow, this Motion is **DENIED**.

## I.  BACKGROUND

The Court set out the factual history of this case in its May 11, 2021 Opinion and Order (ECF No. 93), which denied Defendants' Motion to Dismiss. The Court incorporates those facts as if fully set forth herein.

This case is a consolidated shareholder derivative action based on an alleged bribery, racketeering, and pay-to-play scheme perpetrated by FirstEnergy and its senior officers and directors. Plaintiffs allege that, between 2017 and 2020, Defendants paid more than $60 million in illegal contributions to Ohio public officials, including Speaker of the House Larry Householder, in exchange for favorable legislation designed to bail out the Company's failing nuclear power plants. (*Id.* at 2). The individual Complaints were filed between September and November 2020. Pursuant to a consolidation order, the operative Complaint was filed on January 25, 2021. (ECF

No. 75).

In denying Defendants' Motion to Dismiss, the Court found that "Plaintiffs make extensive and detailed allegations suggesting that the FirstEnergy Defendants issued numerous false or misleading statements through the proxies, and they provide ample reasons as to why the statements misled shareholders. Extensive facts, outlined in the Consolidated Complaint, support their position." (ECF No. 93 at 17). On June 14, 2021, following the Court's Opinion and Order on the Motion to Dismiss, the Court lifted its automatic stay and ordered that "discovery may commence." (ECF No. 98 at 1).

Several weeks later, FirstEnergy formed a Special Litigation Committee ("SLC"). (ECF No. 120-1 at 2). FirstEnergy then filed this Motion on July 20, 2021, seeking a new stay of discovery for six months so the SLC can "evaluate this suit and make a determination with respect to the potential claims asserted by Plaintiffs on behalf of FirstEnergy." (ECF No. 120 at 1).

## II. APPLICABLE LAW

As a general matter, "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel and for litigants." *Landis v. No. Am. Co.*, 299 U.S. 248, 254 (1936). "[E]ntry of such an order ordinarily rests with the sound discretion of the District Court." *Ohio Envtl. Council v. U.S. Dist. Ct., S. Dist. of Ohio*, 565 F.2d 393, 396 (6th Cir. 1977).

Consistent with these principles, courts generally grant SLCs a short stay of discovery "in the absence of special circumstances" so the SLC can evaluate the suit and determine the company's interest. *In re Big Lots, Inc. S'holder Litig.*, 2017 WL 2215461, at *5 (S.D. Ohio May 19, 2017) (Jolson, M.J.) (quoting 2 Principles of Corporate Governance § 7.06 (Am. Law Inst. 1994)). *See also, e.g.*, *In re InfoUSA, Inc. S'holders Litig.*, 2008 WL 762482, at *2 (Del. Ch. Mar.

17, 2008) ("Thus, this Court has routinely granted reasonable stays to allow SLCs to complete their investigations."); *In re Gas Natural, Inc.*, 2015 WL 3557207, at *25 (N.D. Ohio June 4, 2015) (quoting *InfoUSA*) (report & recommendation adopted).[1] Often, courts reason that such stays are consistent with "the inherent right of the board of directors to control and look to the well-being of the corporation in the first instance." *Kaplan v. Wyatt*, 484 A.2d 501, 510 (Del. Ch. Nov. 5, 1984), *aff'd*, 499 A.2d 1184 (Del. 1985).[2]

A stay is not, however, given universally as a matter of course. Many courts—including this one—have recognized exceptions for "special circumstances." *See, e.g.*, *Big Lots*, 2017 WL 2215461, at *5; *Grafman v. Century Broad. Corp.*, 743 F. Supp. 544, 548 (N.D. Ill. July 3, 1990) ("Nevertheless, the corporation's power to investigate derivative claims does not translate into an absolute right to halt all related proceedings. It is the duty of the courts to insure that the corporation's investigation is not a mere artifice for delay. In order to discharge its duty, the court must ascertain among other things (1) when Century's committee began its investigation, (2) how long this investigation should take, (3) what discovery Grafman would like to have in the interim, (4) whether such discovery would interfere with the committee's investigation.") (internal citation omitted); *Strougo on Behalf of Brazil Fund, Inc. v. Padegs*, 986 F. Supp. 812, 815 (S.D.N.Y. Dec.

---

[1] Plaintiffs rely on a further statement in *Landis* that "the suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." 299 U.S. at 255 (1936). This essentially flips the presumption in *Big Lots*, 2017 WL 2215461. However, the quoted passage in *Landis* concerned *staying one case in favor of another*. The very next sentence reads: "Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis*, 299 U.S. at 255. This is not such a case. FirstEnergy does not seek to stay this matter in favor of another—though Defendants did previously attempt to do so. *See* ECF No. 48 (Motion to Stay pending a decision from the Northern District of Ohio in *Miller v. Anderson*); ECF No. 59 at 8–9 (Opinion & Order, citing *Landis* and denying same). This stay, if granted, would allow the SLC six months to investigate, after which this case would proceed. The Court therefore declines to follow *In re OM Group, Inc. Derivative Litig.*, No. 1:03-cv-0020 (N.D. Ohio June 20, 2003) (Vecchiarelli, M.J.) (attached as Ex. 3 in ECF No. 127-1) to the extent it relies on *Landis* for the same point of law.

[2] *But see Crosby v. Beam*, 548 N.E.2d 217, 219 (Ohio 1989) ("A shareholder's derivative action . . . is an exception to the usual rule that a corporation's board of directors manages or supervises the management of a corporation.").

1, 1997) ("Therefore, assuming that a stay would ordinarily be granted, Strougo must show why these circumstances are sufficiently extraordinary to require an exception to the rule."). And for good reason. If SLCs were entitled legally to stays, as FirstEnergy seems to contend, then corporations could abuse the timing of the SLC's formation and the speed of its investigation to stall derivative litigation.

Some "special circumstances" that have led courts to deny a stay include: (1) unreasonable delay, such as belated formation of the SLC; (2) long prior stays during the motion-to-dismiss stage; (3) coordinating discovery with parallel cases; and (4) doubts as to the SLC's independence. *See Big Lots*, 2017 WL 2215461, at *5 (belated formation); *In re MRV Commc'ns, Inc. Derivative Litig.*, 2011 WL 6608642, at *4 (C.D. Cal. Dec. 22, 2011) (unreasonable delay); *OM Group*, ECF No. 127-1, Ex. 3 at 3–4 (belated formation); *Biondi v. Scrushy*, 820 A.2d 1148, 1165 (Del. Ch. Jan. 16, 2003), *aff'd sub nom. In re HealthSouth Corp. S'holders Litig.*, 847 A.2d 1121 (Del. 2004) (independence); *In re Bank of N.Y. Derivative Litig.*, 2000 WL 1708173, at *3 (S.D.N.Y. Nov. 14, 2000) (unreasonable delay, coordination, and independence); *Carlton Inv. v. TLC Beatrice Int'l Holdings, Inc.*, 1996 WL 33167168, at *9 (Del. Ch. June 6, 1996) (prior stay); *In re Storage Tech. Corp. Sec. Litig.*, 804 F. Supp. 1368, 1376 (D. Colo. 1992), *overruled on other grounds by Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246 (10th Cir. 1997) (coordination).

The Delaware courts have, at times, stated the SLC's stay as more of an entitlement. In *Kaplan*, the Delaware Court of Chancery wrote, in dicta: "It is a foregone conclusion that such a stay must be granted." 484 A.2d at 510. *See also In re Oracle Corp. Derivative Litig.*, 808 A.2d 1206, 1211 (Del. Ch. July 10, 2002) ("[T]his court has acknowledged its duty to stay derivative actions at the instance of a special litigation committee, pending the investigation and report of the Committee.") (internal quotation omitted); *Katell v. Morgan Stanley Grp., Inc.*, 1993 WL 390525,

4

at *4 (Del. Ch. Sept. 27, 1993) ("Delaware law requires that all proceedings in this action be stayed pending the Committee's investigation."); *Abbey v. Computer & Commc'ns Tech. Corp.*, 457 A.2d 368, 375 (Del. Ch. Jan. 17, 1983) ("If *Zapata* [*v. Maldonado*, 430 A.2d 779 (Del. 1981)] is to be meaningful, then it would seem that such an independent committee, once appointed, should be afforded a reasonable time to carry out its function. It would likewise seem reasonable to hold normal discovery and other matters in abeyance during this interval.").

But even in Delaware, there are exceptions. In *Carlton*, the Chancery Court denied a stay pending an SLC investigation, reasoning that "[a] motion for a stay of action by its nature is addressed to the discretion of the trial court with regard particularly to its responsibility to order the discovery process and the timing of the motions and trial practice. It is not something that is subject to mandatory rules of law." 1996 WL 33167168, at *8. In the process of denying the stay, the court performed "a balancing of the interests of the plaintiff, the interests of the defendant, all with an eye to the efficient and fair administration of the machinery of justice." *Id.* at *9. Then in *Biondi*, the Chancery Court referenced *Carlton* as "demonstrat[ing] that the general rule favoring stays admits of limited exceptions." 820 A.2d at 1165 n.42. *See also MRV Commc'ns*, 2011 WL 6608642, at *2–3 (California decision, discussing these cases and denying the SLC's stay motion).[3]

Therefore, the Court concludes that the correct standard is that stated in *Big Lots*: "discovery should be stayed [for an SLC investigation] in the absence of special circumstances." 2017 WL 2215461, at *5 (internal quotation omitted). Though courts often grant stays to SLCs

---

[3] Furthermore, Ohio would not necessarily follow the stricter *Kaplan* line of cases. Ohio has codified the stay procedure in the context of limited liability companies; tellingly, it is permissive, not mandatory. O.R.C. § 1706.613 ("For the purpose of allowing the limited liability company or the series thereof time to undertake an inquiry into the allegations made in the demand or complaint commenced pursuant to sections 1706.61 to 1706.617 of the Revised Code [governing derivative actions by LLC members], the court *may* stay any derivative action for the period the court deems appropriate.") (emphasis added). The chapter on general corporation law, which naturally predates the LLC chapter, does not outline an SLC stay procedure in the same detail. O.R.C. Ch. 1701.

during the pendency of an investigation, such a stay remains discretionary and may be denied based on special circumstances.

### III. ANALYSIS

Returning to the FirstEnergy case, the Court recognizes numerous "special circumstances" that caution against a further stay. None of these necessarily is dispositive; but in combination, they reveal that this is not the ordinary case in which the SLC should receive a stay.

*First*, there are indications of delay in setting up the SLC. The member cases in this consolidated action all were filed between September and November 2020. The case in the Northern District of Ohio was filed in August 2020. *Miller v. Anderson*, No. 5:20-cv-1743 (N.D. Ohio). The criminal case, RICO class action, and securities fraud class action all broke in July 2020. *United States v. Householder*, No. 1:20-cr-0077 (S.D. Ohio); *Smith v. FirstEnergy Corp.*, No. 2:20-cv-3755 (S.D. Ohio); *Owens v. FirstEnergy Corp.*, No. 2:20-cv-3785 (S.D. Ohio). Yet, FirstEnergy did not authorize the SLC until June 29, 2021. (ECF No. 120-1 at 5). Part of this delay is attributable to finding new independent board members, as the existing board members all were implicated in the various complaints and thus could not serve on an SLC. Those new board members joined FirstEnergy in March and June 2021. (*Id.* at 5–6). But had the SLC been formed even six months earlier—around the time the consolidated Complaint was filed in this action—the stay FirstEnergy now seeks would not have been necessary.

Instead, FirstEnergy spent those months allowing Defendants to investigate themselves under the auspices of an Independent Review Committee. (ECF No. 127 at 7). Defendants cannot have thought this committee to be a valid substitute for an SLC, which must be independent and disinterested. The Court cannot conceive of any reasonable explanation why this committee

6

proceeded in lieu of naming new board members and setting up the SLC.[4] Nor could our sister court in the Northern District of Ohio, which last month denied a similar stay motion because "the SLC offers no genuine justification for the delay in its creation." *Miller v. Anderson*, 2021 WL 4220780, at *1 (Sept. 16, 2021) (appeal filed).

*Second*, FirstEnergy has received multiple lengthy stays already. An automatic stay, mandated by the Private Securities Litigation Reform Act, was granted in February 2021 and lasted throughout the pendency of Defendants' Motion to Dismiss. (ECF No. 78). The Court lifted that stay on June 14, 2021. (ECF No. 98). A *de facto* stay followed during the pendency of this present Motion. Plaintiffs represent that Defendants "have not yet produced a single page of discovery" (ECF No. 127 at 9 n.11); and FirstEnergy emphasizes that "discovery has not yet even commenced." (ECF No. 129 at 1). Taken together, FirstEnergy has received an eight-month stay of discovery—suggesting that the six months they now seek would be "a mere artifice for delay." *Grafman*, 743 F. Supp. at 548.[5]

*Third*, discovery is proceeding in the parallel cases. FirstEnergy turned over voluminous documents to the government in connection with the deferred prosecution agreement—many of which are now being produced in response to discovery requests in the RICO class action. (ECF No. 127 at 8 (citing docket entries in *Smith*)). Last month, the Northern District of Ohio denied to stay discovery in its derivative action. *Miller*, 2021 WL 4220780, at *1. And in June, this Court

---

[4] FirstEnergy points to *Big Lots*, 2017 WL 2215461, and *InfoUSA*, 2008 WL 762482, for the proposition that an SLC may "be formed shortly after demand was excused, as the [FirstEnergy] SLC was." (ECF No. 129 at 5). The Court does not suggest that in every case, a corporation that waits through the motion-to-dismiss stage will forfeit the ability to obtain a stay for an SLC. Under these facts, however, where FirstEnergy faced a deluge of lawsuits and evidently recognized the need to investigate, FirstEnergy acted unreasonably by delaying the SLC in favor of its Independent Review Committee. This is one "special circumstance" that differentiates the present case from FirstEnergy's cited authorities.

[5] Defendants sought to stay the case even longer. In November 2020, Defendants moved for a stay pending resolution of the motion to dismiss in the Northern District of Ohio. (ECF No. 48). The Court denied that motion. (ECF No. 59). Had it granted the motion, this matter would have been stayed for ten months. *See Miller*, 2021 WL 4220780 (motion to dismiss decided by the Northern District of Ohio in September 2021).

lifted its stay in the securities fraud class action as to documents produced in the other matters. *In re FirstEnergy Corp. Sec. Litig.*, 2021 WL 2414763. Part of the Court's rationale in lifting the stay was that the plaintiff in that case "could suffer a severe disadvantage in formulating its litigation and settlement strategies" and "could find itself in a significantly different position from most of the other litigants related to this matter." *Id.* at *6. The same considerations counsel in favor of discovery for Plaintiffs here.

Moreover, this parallel discovery strongly undercuts FirstEnergy's claims of "significant burden, distraction, and expense of simultaneous discovery." (ECF No. 129 at 9–10). Despite FirstEnergy's repeated assertions, this is not a case where "discovery has not yet even commenced." (ECF No. 129 at 1, 2, 4, 8–9). Simultaneous discovery has begun—just not under this caption—and will continue with or without a stay. This distinguishes the case from, for instance, *Abbey*, 457 A.2d at 375, where no parallel suits are referenced and denying the stay would *cause* simultaneous discovery. Taking the parallel discovery as a given, the marginal time and expense to make it available to Plaintiffs is minimal. Most (if not all) of the documents Plaintiffs initially will seek already have been located, reviewed for responsiveness and privilege, and batched out in other matters. Thus, there is no indication that production here would hinder the SLC in any meaningful way.[6]

When all of these factors are considered in combination, it is clear to the Court that this stay request falls under the exception, not the rule. Ordinarily, an SLC would be permitted to stay discovery pending investigation. Here, however, numerous "special circumstances" counsel

---

[6] The Court need not consider a fourth category of special circumstances: doubts as to the SLC's independence. Plaintiffs indicate that they likely will challenge the SLC if it seeks to dismiss this action. (ECF No. 127 at 16). But that question is not presently before the Court. *Cf. Gas Natural*, 2015 WL 3557207, at *25 ("Judicial economy is served by permitting the independence issue to be addressed after the committee has issued its report.") (quoting *InfoUSA*, 2008 WL 762482, at *2).

against a stay. *Big Lots*, 2017 WL 2215461, at *5. FirstEnergy delayed setting up the SLC; it has received lengthy stays already; and discovery is active in parallel cases. Therefore, the Court determines that this case cannot lie dormant.

## IV. CONCLUSION

For the reasons stated above, FirstEnergy's Motion to Stay pending the SLC's evaluation (ECF No. 120) is **DENIED**. Discovery shall commence without further delay.

    **IT IS SO ORDERED.**

                                               **ALGENON L. MARBLEY**
                                               **CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: October 20, 2021**